# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JAMES D. VINSON,** | **CASE NO. 1:08CV1037** |
| Petitioner, | **JUDGE SOLOMON OLIVER, JR.** |
| v. | |
| | **MAGISTRATE JUDGE GREG WHITE** |
| **RICH GANSHEIMER, Warden,** | |
| **LAKE ERIE CORRECTIONAL** | |
| **INSTITUTION,** | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner, James D. Vinson ("Vinson"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Vinson*, Cuyahoga County Court of Common Pleas Case No. CR436841. Vinson filed his Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on April 23, 2008. On August 27, 2008, Warden Gansheimer ("Respondent") filed his Answer/Return of Writ. (Doc. No. 6.) Vinson did not file a response, but did, on February 27, 2009, file a motion to proceed with an evidentiary hearing and/or grant petitioner's writ of habeas corpus *instanter*. (Doc. No. 7.) On March 13, 2009, Vinson also filed an Application for Bail (Doc. No. 9.), to which Respondent filed an opposition brief. (Doc. No. 10.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For the reasons set forth in detail below, it is recommended that Vinson's Petition be denied.

## I. Facts

In a habeas corpus proceedings instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Vinson's conviction as follows:

{¶ 4} The record reflects Vinson was indicted in the earliest case, viz., CR 436841, as the result of an incident that occurred on the night of March 7, 2003. Two Cleveland Police officers, Todd Marazzi and James Zak, were in the area when they heard a radio broadcast of shots fired at an address on Eaglesmere Avenue near East 140th Street. Marazzi, who was driving the patrol car, decided to respond.

{¶ 5} Upon their arrival at the Eaglesmere Avenue address, they spoke to a female witness, who, during the brief conversation, pointed out a van a block away on East 140th Street, indicating the person who fired the shot was inside that vehicle. They watched as the van turned into a nearby residential driveway on Argus Avenue. The witness informed them the house belonged to Vinson. The van stopped, and a man ran to the rear entrance of the residence.

{¶ 6} Marazzi and Zak quickly reentered their patrol car and went to Vinson's house. Marazzi parked at the end of the short driveway, thereby blocking the van. As he and Zak approached the van with their weapons drawn, another colleague arrived, Officer Jopek. Jopek assisted them in ordering the three passengers out and in placing them against a fence at the edge of the property.

{¶ 7} Before the three officers could do anything else, the side door of the house, which was approximately nine feet away from them, opened. Vinson stepped out, closing the door behind him. Vinson's manner was irate; he demanded to know why the police were in his yard. One of the men lined up at the fence told Vinson the police wanted to speak to him.

{¶ 8} In view of Vinson's aggressive attitude, Marazzi asked him to move away from the door and to show his hands until their investigation could be concluded. As he spoke to Vinson, Marazzi could hear the that a dog was present just inside the residence; he heard the clicking of the dog's nails on the flooring.

{¶ 9} Rather than complying with Marazzi's request, Vinson kept one hand on the door handle and continued to curse at the officers. He further informed them that he had to "put his dog up." Marazzi could hear the dog becoming increasingly agitated; it was growling and urgently scratching at the door. Marazzi told Vinson to remain where he was.

{¶ 10} Instead, Vinson pivoted as if he were going to reenter the house, shouted at the officers to "get off [his] property," and turned the door handle. Immediately, the dog's muzzle appeared at the door. As Vinson stood just outside, the animal pushed the door completely open and "came charging out."

{¶ 11} Marazzi saw that what appeared to be a full-grown pitbull dog "launched itself" at him. He was only steps away from his colleagues, so he backed away as he attempted to take aim with his gun. When the dog was within a foot of his groin area, Marazzi "sidestepped," let the dog's momentum carry it past the point where a bullet might harm any of the others, and began firing his weapon at the dog. The other officers joined him; ultimately, between them, the officers discharged fourteen rounds of ammunition. Before the dog died, it continued to crawl toward Marazzi. Vinson uttered nothing throughout the incident.

(Resp. Exh. 12, ¶¶ 4-11.)

## II. Procedural History

### A. Conviction

On March 7, 2003, a Cuyahoga County Grand Jury indicted Vinson in case number CR-436841 on three counts of felonious assault, each with a peace officer specification, and one count of resisting arrest. (Resp. Exh. 1.) On May 5, 2005, a jury found Vinson guilty of three counts of felonious assault with peace officer specifications. (Resp. Exh. 3.) He was found not guilty of resisting arrest.[1] *Id*.

On August 23, 2005, the trial court sentenced Vinson to concurrent five-year sentences for each count of felonious assault. (Resp. Exh. 6.)

### B. Direct Appeal

Represented by new counsel, Vinson filed a timely Notice of Appeal to the Eighth District Court of Appeals, Cuyahoga County, Ohio ("state appellate court"). The state appellate court consolidated Vinson's three cases for purposes of appeal. (Resp. Exh. 9.) Five assignments of error were raised:

1. The state failed to present sufficient evidence to sustain appellant's convictions.

2. The appellant's convictions are against the manifest weight of the evidence.

3. The trial court erred when it denied appellant his right to a speedy trial.

4. Appellant was denied his constitutional right to a fair trial when he involuntarily entered his plea of guilt [sic].

5. The court's imposition of appellant's sentences is not supported by the record. Accordingly, the sentence is contrary to law and violates appellant's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Section Sixteen of Article One and the Ohio Constitution.

(Resp. Exhs 8, 10). On August 3, 2006, the state appellate court affirmed Vinson's convictions and sentence. (Resp. Exh. 12.) The judgment entry was journalized on August 14, 2006. *Id*.

---

[1]Vinson also pled guilty in two subsequent cases. In Cuyahoga County case number CR-442710, he pled guilty to one count of aggravated assault and was sentenced to a seventeen month prison term; and in case number CR-450233, he pled guilty to one count of possession of drugs and was sentenced to an eleven-month prison term. (Resp. Exhs. 6 and 7.) The court ordered these sentences to be served concurrent to each other and concurrent to the sentence imposed in case number CR-436841. *Id*. Vinson does not challenge these convictions.

3

Vinson, represented by the Public Defender's Office, timely appealed to the Ohio Supreme Court raising three propositions of law:

1. A defendant may not be convicted of a felonious assault upon a peace officer without proof beyond a reasonable doubt that the defendant knowing [sic] attempted to cause physical harm to the officer by means of a deadly weapon.

2. A defendant is entitled to minimum sentence when no jury has found the facts needed to support a higher sentence.

3. A defendant is denied his constitutional right to a speedy trial when repeated continuances over a period exceeding two years result in the loss of a critical witness.

(Resp. Exhs. 13, 14.) On December 27, 2006, the Ohio Supreme Court dismissed Vinson's appeal as not involving any substantial constitutional question. (Resp. Exh. 15.)

**C. Application to Reopen**

On October 24, 2007, Vinson, *pro se*, applied to reopen his direct appeal in the state appellate court pursuant to Ohio App. R. 26(B) ("26(B) motion") raising the following three errors:

1. Appellate Counsel (Susan Moran) was ineffective for failing to raise ineffective assistance of trial counsel (William Dawson) for not protecting his client's Constitutional rights, where trial counsel failed to file a motion to suppress or dismiss the felonious assault charges as being inadmissible in violation of defendant's Fourth Amendment Rights.

2. Appellate Counsel was ineffective for failing to raise issues that trial Counsel's performance was deficient, when Counsel failed to argue the validity of Vinson's arrest, Prosecution lacked the subject matter to indict for felonious assault, while trial Court lacked jurisdiction of the subject matter to convict Vinson of first degree felonious assaults.

3. Appellate Counsels failed defendant greatly, when neither Counsel challenged the issue of prosecution withholding exculpatory evidence and exculpatory information from the defense at trial. Their failure to bring these issues to the courts [sic] attention deprived defendant of a fair review from the Eighth District Appellate Court.

(Resp. Exh. 16.) On January 15, 2008, the state appellate court in a written decision declined to reopen the appeal citing Vinson's failure to show good cause for his untimely filing. (Resp. Exh. 18.) Pursuant to Ohio App. R. 26(B)(1), an application for reopening must be filed within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time. *See Fautenberry v. Mitchell*, 515 F.3d 614, 639 (*citing State v. Murnahan*,

63 Ohio St.3d 60 (1992)).

Vinson, *pro se*, appealed to the Supreme Court of Ohio raising three propositions of law:

1. A state appellate district court abuses its discretion when denying a defendant-appellant's application for reopening, pursuant to App.R. 26(B), based on clearly egregious acts of appellate ineffectiveness.

2. A defendant shall not be convicted of felonious assault upon peace officers when said officers conduct a warrantless arrest based on insufficient probable cause, and an illegal search and seizure, in violation of U.S. Const. Amends. 4, 5, 14, and Ohio Const. Art. I, §§ 10, 14.

3. A defendant is deprived of due process of law, pursuant to U.S. Const. Amend. 5, the Due Process Clause of U.S. Const. Amend. 14, and Ohio Const. Art. I, § 10, when the name of the charged offense at time of arrest is changed without a subsequent complaint being filed for the newly charged offense.

(Resp. Exhs. 19, 20.) On April 9, 2008, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Exh. 21.)

### D. Other Motions

On August 1, 2006, Vinson, through counsel, filed a motion for judicial release in the trial court, which was denied on August 28, 2006. (Resp. Exhs. 22 -24.) On February 2, 2007, Vinson, *pro se*, filed a motion to vacate his conviction based on ineffective assistance of counsel and violations of his Fourth Amendment rights. This was also denied. (Resp. Exhs. 28, 29.) On November 9, 2007, Vinson, *pro se*, filed a motion to vacate judgment, which again the trial court denied. (Resp. Exhs. 30, 31.) Vinson did not appeal any of these rulings.

On April 18, 2007, Vinson, *pro se*, petitioned the Eleventh District Appellate Court for a writ of habeas corpus. (Resp. Exh. 32.) The Court of Appeals dismissed the writ stating that Vinson was "unable to demonstrate a jurisdictional defect in his conviction and the lack of an adequate legal remedy." (Resp. Exh. 34.) He did not appeal this ruling to the Ohio Supreme Court.

### E. Federal Habeas Petition

Vinson's habeas petition raises four grounds for relief:

**Ground One**: Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

**Supporting Facts**: On March 7, 2003, Cleveland Police Officers Daniel Jopek, Todd Marazzi, and James Zak unlawfully trespassed onto petitioner's

5

property, maliciously killed petitioner's pet dog, and assaulted petitioner without any justifiable, sufficient probable cause.

**Ground Two**: Conviction obtained by violation of due process of law and equal protection under the law.

**Supporting Facts**: On March 10, 2003, petitioner was arrested and charged with misdemeanor assault, and subsequently binded [sic] over to Cuyahoga County Common Pleas Court. After being released on bail for said assault offense, petitioner appeared before the court pursuant to an April 23, 2003, hearing, and was once again bind [sic] over and indicted for different offenses of felonious assault and resisting arrest without being discharged and/or adjudicated of the former misdemeanor offense of assault.

**Ground Three**: Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant favorable evidence.

**Supporting Facts**: The prosecution withheld a second 911 dispatch tape that was made by state's witness Darryl Wherry. The prosecution withheld Officer Jopek's whereabouts, which precluded confrontation of witness, and prosecutor procured a false indictment against petitioner. Also, prosecutor permitted perjured testimony of state's witness Officer James Zak.

**Ground Four**: Denied the effective assistance of counsel.

**Supporting Facts**: Trial counsel failed to file a motion to suppress the unlawful arrest and illegal search and seizure of petitioner, while direct appellate counsel failed to raise ineffective assistance of trial counsel, and subsequent appellate counsel failed to raise ineffective assistance of appellate counsel.

(Doc. 1.)

### III. Exhaustion and Procedural Default

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),(c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his

6

claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986). Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D.Ohio 2002).

A petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded

7

counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel can be cause for a procedural default. *Murray*, 477 U.S. at 488. However, the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*. at 489. Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. However, it is not necessary to resolve the issue of prejudice if a petitioner has not shown cause. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir.1983).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

### IV. Analysis

In the instant Petition, Vinson raises four grounds: a Fourth Amendment violation alleging an illegal search and seizure (ground one), due process and equal protection violations (ground two), a prosecutorial misconduct claim (ground three), and ineffective assistance of trial and appellate counsel (ground four). Respondent contends that Vinson has procedurally defaulted all four grounds as they were not presented on direct appeal.[2]

It is clear that none of Vinson's federal habeas claims were raised on direct appeal at either the state appellate court or in the Ohio Supreme Court. Giving Vinson the benefit of all doubt, he did attempt to raise most of these grounds in his 26(B) motion to reopen his direct

---

[2]Vinson believes that Respondent conceded to his grounds for relief when Respondent stated that they were not presented on direct review. (Doc. 7, p 2-3.) However, Respondent did not address the merits of Vinson's claims in any filing to date.

8

appeal, but they all were premised upon the ineffectiveness of his appellate counsel.[3] This Court need not consider the merits of any claim underlying the argument regarding his appellate counsel's ineffectiveness, if the latter issue was not properly raised in the state courts.

A claim of ineffective assistance of appellate counsel may constitute cause for a procedural default, *see Murray*, 477 U.S. at 488, unless the claim itself is procedurally defaulted. An analysis of the record requires the finding that such claim was, in fact, procedurally defaulted as Vinson did not raise it in a timely manner under Ohio App. R. 26(B) and did not show cause why he failed to do so. The state appellate court, the last court to render a reasoned opinion on Vinson's claim, denied his application to reopen under App. R. 26(B) citing his failure to show good cause for his untimely filing. The Ohio Supreme Court's later unexplained decision summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rest on the same procedural default.[4] *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991); *Taqwiim v. Johnson*, 229 F.3d 1154, 2000 WL 1234322, at *3 (6th Cir. 2000).

Applying the first factor of the *Maupin* test, Vinson failed to comply with an applicable state procedural rule when he filed an untimely 26(B) motion with the state appellate court. In Ohio, a criminal defendant must file an ineffective assistance of appellate counsel claim in a 26(B) motion (application for reopening) within 90 days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time. Ohio App. R. 26(B)(1); *Fautenberry v. Mitchell,* 515 F.3d 614, 639 (*citing State v. Murnahan*, 63 Ohio St. 3d 60 (1992)). Here, the state appellate court ruling on the 26(B) motion found that Vinson did not file his application for reopening until October 24, 2007, which was more than 90 days after journalization of the appellate judgment on August 14, 2006. Furthermore, the state appellate

---

[3]It is difficult to compare all of Vinson's federal habeas grounds with the issues raised in his 26(B) motion to reopen his direct appeal. A detailed comparison is not, however, necessary to the disposition of this matter.

[4]Vinson presented three different claims to the Ohio Supreme Court, one of which was that the state appellate court abused its discretion by denying the 26(B) motion. (Resp. Exh. 19.)

9

court held that Vinson failed to establish a "showing of good cause" for the untimely filing.

As to the second and third prongs of *Maupin*, the Sixth Circuit has upheld procedural defaults based on non-compliance with the timeliness requirements in Ohio App. R. 26(B). *Parker v. Bagley,* 543 F.3d 859, 861-862 (6th Cir. 2008, *rehg and rehg. en banc den.* Jan. 2009*); Fautenberry*, 515 F.3d 614, 640 (6th Cir. 2008); *Scuba v. Brigano*, 527 F.3d 479,485, 488-489 (6th Cir.2007.)   The *Fautenberry* Court ruled that the time constraints in a 26(B) application are "an actually enforced, adequate and independent state ground upon which the Ohio courts consistently refuse to address ineffective assistance of appellate counsel claims." *Id.*; *see Coleman v. Mitchell*, 244 F.3d 533, 539-40 (6th Cir. 2001)(finding that the petitioner procedurally defaulted his claim because he failed to comply with the requirements in Ohio App. R. 26(B)); *Wickline v. Mitchell*, 319 F.3d 813, 823 (6th Cir. 2003)(finding that the petitioner's ineffective assistance of appellate counsel claims were procedurally defaulted because he failed to comply with the rule set forth in *Murnahan*).  Accordingly, Vinson's ineffective assistance of appellate counsel claim is barred from review by this Court, either as cause for default of his other habeas grounds or as an independent claim, absent a showing of cause and prejudice or meeting the actual innocence threshold.

To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Carrier* at 488. A petitioner's ignorance of the law or the appropriate state court procedures do not constitute cause.  *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)(*citing Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)).  Vinson presents no showing of  "cause," other than that appellate counsel failed to raise on direct appeal his four grounds of relief as brought in this Petition. Vinson has presented no evidence of any objective factor that may have impeded his efforts to comply with the state procedural rule.  Therefore, he has failed to establish cause for the procedural default of his ineffective assistance of appellate counsel claim.

Lastly, a procedural default may be excused based on actual innocence.  Vinson claims that he is "more probably innocent than guilty" but gives no supporting facts.  (Doc. 7, p. 7.) This argument is more akin to a sufficiency challenge than a claim of actual innocence.  The

Supreme Court has stated that an actual innocence claim must be based on factual innocence, not legal innocence, and that:

> [t]he prisoner must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Epps v. Ohio Authorities*, 2007 WL 141963 , *2 (N.D. Ohio Jan. 17, 2007)(citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)) (*quoting Kuhlmann v. Wilson*, 477 U.S. 436, 454 n. 17 (1986) (internal quotation marks omitted)).  Furthermore, claims of actual innocence "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations."  *Crews v. Cason*, 2005 WL 2123729, *6 (E.D. Mich. Aug. 31, 2005)(*quoting Herrera v. Collins*, 506 U.S. 390, 417 (1993)).

Here, Vinson presented two affidavits, his own and that of Darryl Wherry, a guest in Vinson's home the night of the incident.  (Doc. No. 1-13, 1-14.)  According to Vinson, Wherry was a state witness.  (Doc. No. 1, Ground Three, Supporting Facts.)  Wherry's affidavit is redundant of the arguments presented by Vinson, that the dog escaped and Vinson had not set the dog upon the officers.  (Doc. No. 1-14.)  No argument has been advanced that Wherry's potential testimony was wrongfully excluded or became available only after trial.  Vinson clearly knew of Wherry's presence in his home and could have called him to testify.  *Id*.  Vinson himself elected not to testify in his own defense.  No viable actual innocence claim has been raised.

### V.  Evidentiary Hearing

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir.2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir.1994) (citation and internal quotation omitted)).  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit.  (*Id.*)

In this case, upon review of the pleadings, the procedural issues presented can be

11

resolved from the record. An evidentiary hearing is, therefore, not required.

## VI. Application for Bail

Vinson filed an application for bail (Doc. No. 9) requesting this Court to release him from prison pending the disposition of the instant Petition. The undersigned recommends the application for bail be denied.

## VII. Conclusion

Having failed to establish "cause" or to raise a colorable actual innocence claim to excuse his procedural default, Vinson's Petition should be denied.

>	s/ Greg White
>	United States Magistrate Judge

Dated:  May 8, 2009

**OBJECTIONS**
**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**